# UNITED STATES

*v.*

## CRISTOBAL NEGRÓN.

---

San Juan, Criminal, No. 1497.

Viol. § 65, Penal Code.

**Marshal—Custody of Jury.**
> When a jury is committed to his care, the marshal shall neither permit anyone else to communicate with that body, nor do so himself, except as to such matters as concern their comfort. Any instructions must come from the court upon the request of the foreman. The good faith of the marshal is immaterial.

Opinion filed March 17, 1921.

---

*U. S. Attorney Martin* for plaintiff.

*Mr. Siaca* for defendant.

Hamilton, Judge, delivered the following opinion:

There is a matter that I think I should refer to, not in any harshness at all but simply to get the running of the court in better order. A juror came to me and told me on behalf of

United States v. Negrón.

several jurors that in the criminal case just finished the bailiff and also the deputy marshal now before me, in response to inquiries told them that they would have to render a verdict, that the court in a criminal case would not only not accept a sealed verdict but would not accept a disagreement and that they would have to stay there from three days to a week. I am quite sure, of course, that the deputy marshal and the bailiff have not stated any such thing officially, that whatever was said was in response to request from jurors, and I am quite sure that nothing was intended out of the way at all and it is not my desire to impute anything improper to you, but I think I should say this for the information of all the marshals and the bailiff. If I have not made it clear in the past, I am sorry, but I do not wish it to occur in the future. The marshal, deputy marshal, or whoever is in charge of a jury, is to have no communication whatever with the jury, answer no questions of any kind except simply as to getting ice water, or as to meals, or things connected with the actual comfort of the jury. That, of course, is what they are for; that is all right. But as to how the jury shall conduct themselves, how long they will be there, or what the court has done in the past in regard to preceding verdicts, or anything else whatever, is not to be mentioned by the bailiff or anybody. The bailiffs are to keep other people from talking to the jury and of course they cannot do the same thing. The result, I am told, in this particular case, was that a juror who otherwise would not have consented to the verdict got the impression that he had to stay there for a number of days and by moral force or immoral force was constrained to agree with the majority for personal reasons which he could not give at that time. This may be a reflection, it is,

United States v. Negrón.

I think, a reflection on the juror, but it shows what is the result of conversation with the jury.

Now, that is what should not have been done. As to what should have been done; if there is anything that any one juror ought to know, he cannot communicate with anybody. He must ask it through the foreman. That is what the foreman is for, and what the foreman is to do is to get all instructions of a general character from the court. It is quite true in this instance, and frequently, that the judge was not down town, but that is one of the inconveniences of our system of trial. The jury is a unit, and can communicate with no one except the judge. The foreman could be permitted, in the presence of the bailiff, to ring up the judge by telephone and communicate with him. If there is any impropriety in that, it would be upon the judge, it would not be upon the marshal's office. Although I do not like to stand on street corners and take street cars, I have not hesitated to come down, I think, in the past at any time that my presence was required, and I will do so in the future. The only safe rule is to have no communication with the jury, or rather for no one to have any communication with the jury except the judge. This is not only a safe rule, but the law. In this case its violation has resulted in a miscarriage of justice. One case is just as important as another in that regard, in regard to the proper conduct of the court itself. Not meaning to say anything at all that will grieve you in the slightest, the erroneous impression, however it rose, did get to the jury. I will take no further notice of it; but you can see it has turned out an exceedingly important matter, and I must ask you firmly that nothing of this sort occur in the future. I am not asking any explanation, as I know what was done was done in per-

fectly good faith. The wrong impression got to the jury in some way, however, and it got there through one or the other of you. It is not the intention but the facts which have resulted unfortunately.